UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION at PIKEVILLE**

| | |
|---|---|
| DARRELLYN BURTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:07-41-JMH |
| ) | |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | **MEMORANDUM OPINION AND ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's decision denying her Supplemental Security Income and Disability Insurance Benefits [Record Nos. 11, 12].[1]  Jurisdiction exists pursuant to 42 U.S.C. § 405(g).  The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion for the reasons stated in this memorandum opinion and order.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for Supplemental Security Income (SSI) in June 1995 [Administrative Record (hereinafter, "AR") 29-32.]  She was found to have an affective

---

[1] These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

1

disorder that rendered her disabled as of June 1, 1995. [*Id.* at 40.] During an initial disability review, it was found that Plaintiff had experienced medical improvement and that her disability due to an affective disorder ceased as of September 1, 2001. [*Id.* at 47.] Consequently, her SSI payments were terminated as of November 1, 2001. [*Id.*] The claim was denied on reconsideration. [*Id.* at 51-56.] Plaintiff then timely requested and appeared at a hearing before Administrative Law Judge ("ALJ") Charles J. Arnold on November 22, 2005. [*Id.* at 71, 391-411.] In a Decision dated March 6, 2006, ALJ Arnold found that Plaintiff was not disabled and no longer eligible for benefits. [*Id.* at 11-23.] Plaintiff timely appealed. [*Id.* at 9.] The Appeals Council denied Plaintiff's request for a review of the ALJ's decision on January 25, 2007, and the ALJ's Decision became the final decision of the Commissioner. [*Id.* at 5-7.] Her administrative remedies having been exhausted, Plaintiff now appeals that Decision to this Court, and it is ripe for review. 42 U.S.C. § 1383(c)(3).

At the time of the ALJ's decision, the plaintiff was 29 years old. [*Id.* at 394.] She completed eleventh grade, obtained her GED, and attended classes at Southeast Community College. [*Id.* at 394-95.] She has no past relevant work experience as she has never worked. [*Id.* at 395.] During the hearing before the ALJ, she stated that she is disabled due to "diabetic neuropathy in my legs and feet, and my nervousness around a lot of people . . . [,]

depression and one of my doctors told me that I had two disks in my back that don't have enough cushioning." [*Id.* at 395.]

On March 6, 2006, the ALJ made the following findings of fact in determining that Plaintiff was not entitled to disability benefits:

> 1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2. The claimant's diabetes mellitus, ankle capsulitis, heel spur, tendonitis, and arthritis are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).
>
> 3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
>
> 4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.
>
> 5. The claimant retains the residual functional capacity for sedentary work.
>
> 6. The claimant has no past relevant work (20 CFR § 416.965).
>
> 7. The claimant is a younger individual between the ages of 18 and 44' (20 CFR § 416.963).
>
> 8. The claimant has a 'high school (or high school equivalent) education' (20 CFR § 416.964).
>
> 9. The claimant has the residual functional capacity to perform the full range of sedentary work (20 CFR § 416.967).
>
> 10. Based on exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 201.27.
>
> 11. The claimant was not under a "disability," as

3

      defined in the Social Security Act, at any time through the date of the decision (20 CFR § 416.920(g)).

[AR at 22.]

## II. OVERVIEW OF THE PROCESS

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

    1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

    2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

    3. If an individual is not working and has a severe impariment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

    4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

    5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis

4

reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

**III. STANDARD OF REVIEW**

In reviewing the ALJ's decision to deny or, in this case, decline to continue disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348,353 (6th Cir. 2001), and whether the ALJ employed the proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. Furthermore, the court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

**IV. ANALYSIS**

As an initial matter, the Court notes that Plaintiff does not

5

challenge the ALJ's determination that she experienced medical improvement with regard to the affective disorder upon which her award of benefits was based in 1995, nor has she challenged his determination that she currently has a different set of impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Rather, she argues that the ALJ failed to properly consider her current physical and mental limitations in determining her residual functional capacity (hereinafter, "RFC") and that, thus, his Decision was not supported by substantial evidence and he erred in applying Medical-Vocational Rule (the Grid) 201.27.

Specifically, Plaintiff argues that no evidence of record supports the ALJ's conclusion that she retains the RFC for a "full range of sedentary work," that he made no findings as to her limitations, restrictions, and/or work related abilities, and failed to even consider the evidence of record with regard to her mental limitations because he found that she had no mental limitations. For the reasons which follow, the Court disagrees with Plaintiff's arguments and will affirm the decision of the Commissioner.

In the first instance, the Court takes issue with Plaintiff's assertion that the ALJ made no findings as to her limitations, restrictions, and/or work related abilities and failed to even

6

consider the evidence of record with regard to her mental limitations. In that portion of his Decision dedicated to Plaintiff's RFC, the ALJ recounts his review of the evidence of record in some great detail, citing to the records of treating and consulting physicians, and he reflects on the absence of any evidence of physical limitations and restrictions in the record. [AR at 20.] He further notes the evidence of mild mental restrictions found in the record, looking both the treatment records of Plaintiff's treating physicians and psychiatrists and to the assessments made by consulting psychiatrists and physicians. [*Id.*] The ALJ reflected, as well, on Plaintiff's own testimony regarding her limitations before concluding that she retains the RFC for a full range of sedentary work because:

> [t]he severity of the symptoms and limitations are not as alleged and are not supported by the objective medical evidence provided by the records of both treating and examining physicians. She has no more than mild restrictions in activities of daily living, social functioning and in maintaining concentration, persistence or pace. She has not had repeated episodes of decompensation. There is no evidence of presence of 'C' criteria.

[AR at 20.] In other words, the ALJ not only made findings with regard to Plaintiff's physical and mental limitations, but he relied upon record evidence in doing so.

Next, this Court finds that substantial evidence of record supports the ALJ's finding that Plaintiff has no more than the

7

mildest of restrictions in the activities of daily living due to ankle capsulitis[2], heel spur, tendonitis, and arthritis and belies Plaintiff's contention that she suffers from severe bilateral foot and leg impairments which affect her ability to stand and walk. The Court has before it (as did the ALJ) Plaintiff's own testimony concerning neuropathy in her legs and feet, daily swelling, tingling, and burning that is worsened by being on her feet, sitting, or standing for too long, and skin buildup on her feet that she claims interferes with her ability to walk and stand.  [AR at 395, 398-401.]  The ALJ ultimately found that her testimony was "not entirely credible"[3] as the severity of symptoms and limitations were not as alleged, particularly considering the evidence that "she lives alone . . .[,] has no trouble taking care of personal needs . . .[,] cooks, washes dishes, mops, vacuums and does grocery shopping . . . [,] drives, goes out for shopping, and has pets . . . [,] goes out, apparently socializes and admits that she is pregnant."  [AR at 20.]

Further, even though there is record evidence of ongoing treatment for bilateral foot pain, burning sensations, and diabetic

---

[2] "[T]he inflammation of a capsule, as that of the . . . joint," here the ankle. *Dorland's Illustrated Medical Dictionary* 261 (28th ed. 1994).

[3] Plaintiff has not challenged the ALJ's credibility assessment, and the Court may not properly make such a determination, in any event, on this review. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)

neuropathy, as well as ankle capsulitis, heel spur, PT tendonitis, plantar fasciitis[4], arthritis, and verucca[5], none of Plaintiff's treating physicians noted the existence of any significant limitation to her physical abilities. [AR at 323-361, 367-368, 383-89.] Accordingly, the ALJ was left with and properly considered the assessments of the consulting physician, Dr. Helm, who opined that she had no physical limitations based on physical examinations in November 2001 and May 2003, i.e., she had no impairment in sitting, standing, walking, moving, lifting, carrying, handling objects, hearing, seeing, speaking or traveling. [AR at 284-87; 306-11.]

With regard to Plaintiff's alleged mental limitations, the Court notes (as did the ALJ) that there is no evidence in the record of psychiatric treatment from 1995 through January 2002, and, thus, the only relevant records related to Plaintiff's mental health are those from Kentucky River Community Care, Inc., from

---

[4]"Fasciitis" being the "inflammation of fascia" and "plantar fascia" being the "aponeurosis plantar" or the "bands of fibrous tissue radiating toward the bases of the toes from the medial process of the tuber calcanei," the court understands plantar fasciitis to be an inflammation of certain bands of tissue which run from the heel (the "tuber calcanei") to the toes in the human foot. *Dorland's Illustrated Medical Dictionary* 107, 245, 610-12, and 1754.

[5]"[A] lobulated hyperplastic epidermal lesion with a horny surface caused by a human papillomavirus, transmitted by contact or autoinoculation and usually occurring on the dorsa of the fingers and hands; called also *common wart*." *Dorland's Illustrated Medical Id.* at 1818 (emphasis in original).

9

January through July 2002, the opinions of the consulting psychiatrist, Dr. Eggerman, and consulting physician, Dr. Helm, as well as those assessments and opinions offered by the reviewing physicians.

The ALJ found no evidence that her treating psychiatrists and physicians had diagnosed or noted the existence of any significant limitation for Plaintiff since her original treatment for affective disorder in the mid-1990s. The Court notes the same, having reviewed all of the evidence of record. Looking to the opinions of the consulting state agency physicians, the Court finds evidence – as did the ALJ – that the consulting psychiatrist, Dr. Eggerman, remarked on Plaintiff's normal mental status exam, a full range of affect and no depression, mild anxiety, and a GAF score consistent with only mild symptoms. [AR at 239-45.] He noted no mental limitations for the Plaintiff. [*Id.*]

The Plaintiff argues that the ALJ erred when he failed to note or rely upon the record opinions of two reviewing state agency medical consultants, Drs. Ilze A. Sillers and Jan Demaree. Dr. Sillers, who never examined or interviewed Plaintiff in person, found Plaintiff to be moderately limited in her ability to carry out detailed instructions, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. [AR at 247-48.] Dr. Sillers also noted that Plaintiff's ability to maintain attention and concentration was somewhere

between moderately limited and not significantly limited. [AR at 247.] She remarked on Plaintiff's mild restrictions of the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, and pace, and no repeated episodes of decompensation. [*Id.* at 261.] Commenting on Plaintiff's Functional Capacity, Dr. Siller's wrote that:

> At current review, her depression was marginal . . . *her personality disorder does not preclude employability. Overall case findings support a capacity to meet rather simple work demands. The opinions of Dr. Eggerman are given great weight and adopted*. Ms. Burton is able to understand, remember, and carry out simple tasks, relate to others and adapt to [*illegible*] changes.

[*Id.* at 249 (emphasis added).] Dr. Jan Demaree offered no criticism of Dr. Eggerman's assessment and found Plaintiff to be moderately limited in her ability to maintain attention and concentration for extended periods, to interact appropriately with the general public, and to respond appropriately to changes in the work setting. [*Id.* at 265-66.] When rating Plaintiff's functional limitations, she found that Plaintiff had a mild degree of restriction of the activities of daily living, moderate difficulties in maintaining social functioning, mild to moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. [*Id.* at 279.]

To the extent that the ALJ did not accept the opinions of the two non-examining consulting psychiatrists and, instead, accepted the opinion of Dr. Eggerman, who personally examined Plaintiff, it

11

was not error.[6]  It is for the ALJ to determine the weight to be

---

[6]     The ALJ's apparent treatment of the two non-examining psychiatrists' opinions is in keeping with the regulations:

> When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. [20 C.F.R.] § 404.1527(d)(1). The SSA will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)...." *Id.* § 404.1527(d)(2). The SSA promises claimants that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id.*

*Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). As Plaintiff points out, the ALJ "must consider opinions of State agency medical or psychological consultants, other program physicians and psychologists" as opinion evidence, and:

> [u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 CFR §§ 404.1527(f)(2), (f)(2)(I). Much as with the "reason giving" required in § 404.1527(d)(2), the requirement of an explanation as to the weight given an opinion applies only to situations were the opinion of a non-treating physician or psychologist is given precedence over the opinion of a treating physician. *See Smith*, 482 F.3d at 875-76 (6th Cir. 2007). This is to say that the ALJ did not err when he relied on the opinion of Dr. Eggerman, clearly explaining in his decision the weight afforded Dr. Eggerman's opinion in lieu of the opinion of any of

given to the evidence, so long as it is supported by objective medical evidence. Thus, even if the opinions of Drs. Sillers and Demaree constitute evidence that would support an opposite conclusion to that reached by the ALJ, i.e., mental impairment of some significance to Plaintiff's RFC, there is substantial evidence of record to support the conclusion of no mental limitation reached by the ALJ, and this Court will afford it appropriate deference. *See Key,* 109 F.3d at 273.

Ultimately, the ALJ's determination that Plaintiff has the RFC to perform a full range of sedentary work and that she has no limitations, mental or physical, which significantly impact her ability to perform that work is supported by substantial evidence of record. As Plaintiff failed to show that she had nonexertional limitations on her ability to work that would have precluded the use of the Grids, the ALJ properly applied the Grid Rule 201.27, which satisfied (1) the Commissioner's burden of showing that work existed in significant numbers in the national economy which Plaintiff could perform and (2) provided substantial evidence to

---

Plaintiff's treating physicians or psychiatrists. He was not, however, obligated to provide an explanation as to why he did not rely upon the opinions of Drs. Sillers and Demaree.
  Further, under 20 C.F.R. § 404.1527(e)(2), the "final responsibility for deciding [the issue of residual functional capacity" is reserved to the Commissioner[,]" and no "special significance [will be given] to the source of an opinion reserved to the Commissioner" under paragraph (e)(2). 20 C.F.R. § 404.1527(e)(2)-(3). It follows that the ALJ was under no obligation to give special weight to the opinions of Drs. Sillers and Demaree with regard to the RFC.

support the ALJ's conclusion that Plaintiff could perform other work and was not disabled within the meaning of the Social Security Act. The Decision of the ALJ will be affirmed.

**V. CONCLUSION**

For the foregoing reasons, **IT IS ORDERED**:

(1) That the Commissioner's motion for summary judgment [Record No. 12] shall be, and the same hereby is, **GRANTED**.

(2) That the plaintiff's motion for summary judgment [Record No. 11] shall be, and the same hereby is, **DENIED**.

This the 11th day of February, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge